■ KENNETH D. LAUB & COMPANY, INC., Respondent, v 101 PARK AVENUE ASSOCIATES, Appellant. — Judgment, Supreme Court, New York County (Louis Grossman, J.), entered November 7, 1983, granting judgment to plaintiff in the sum of $118,404, with interest thereon, upon the order (same court) entered October 20, 1983, which had granted plaintiff's motion for summary judgment, unanimously reversed, on the law, with costs and disbursements, the judgment vacated and the motion denied. The appeal from said order is dismissed as subsumed in the appeal from the judgment, without costs. ¶ Plaintiff, a licensed real estate broker, brought this action to recover a brokerage commission from defendant, a limited partnership and the owner of an office building at 101 Park Avenue in Manhattan. The commission was sought pursuant to a brokerage agreement entered into on May 12, 1980. The agreement related to "a certain lease" to be made between defendant, as landlord, and Dewey, Ballantine, Bushby, Palmer & Wood (Dewey), as tenant. The complaint alleges that on November 11, 1980, the landlord and Dewey entered into a 15-year lease for the 40th and 41st floors of the building and, as a result, plaintiff was entitled to a commission based upon certain percentages provided for in their agreement. ¶ The owner, in defense, admitted having executed the agreement, the lease and that Dewey had taken possession but alleged, as affirmative defenses, that plaintiff was not the procuring cause of the lease and played no part in the transaction by which Dewey leased two floors in the building, containing 45,000 square feet of space. It was also alleged that the May 12 agreement was entered into under false representations by the broker that it was authorized to obtain space for Dewey when, according to the owner, plaintiff was not so authorized and had been retained by the law firm for an entirely different purpose. Much of the factual information in the record relating to the defense of the action has been furnished by Dewey, which has a real interest since, under the terms of the lease entered into with 101 Park Avenue Associates, the law firm agreed to pay any commission due to plaintiff and to indemnify and hold the landlord harmless

against any claim for a brokerage commission which might be asserted by any broker or finder, except the landlord's broker, who was named in the lease and whose commission defendant agreed to pay. The indemnity agreement included a covenant, warranty and representation "that no negotiations were had by Tenant with any broker or finder with respect to the Demised Premises or the Building except [the landlord's broker] and Kenneth D. Laub & Company, Inc. concerning the renting of the Demised Premises." ¶ According to defendant, plaintiff was retained to aid Dewey in renegotiating its existing lease at 140 Broadway, where the law firm had 150,000 square feet of space. The letter agreement between plaintiff and Dewey provided for a percentage commission to be paid based upon any resultant savings to Dewey under a proposed lease which had been received from the landlord for an additional 10-year term. Plaintiff suggested that, as Dewey's representative, it would ascertain rental figures in other comparable buildings to use as evidence of market value in the lease renewal negotiations for the existing space. As part of that plan, plaintiff contacted defendant and, representing that it was Dewey's broker, indicated that the law firm was interested in 150,000 square feet of space. When defendant's general partner, Peter Kalikow, as a condition to providing such information, insisted upon a written letter of authorization from the law firm, such a letter was issued, representing that plaintiff was authorized "to negotiate and obtain a written proposal * * * for the leasing of 150,000 square feet of space". Similar letters from Dewey were sent with respect to space at the World Trade Center and 805 Third Avenue and, according to Dewey, plaintiff knew that the law firm had no intention of moving and that the letters were issued solely to obtain rental quotations. ¶ Subsequently, in August of 1980, Dewey learned that its client, Chase Manhattan Bank, planned to move its real estate department to 101 Park Avenue. As a result and without any participation by plaintiff, Dewey negotiated a lease with defendant at those premises for its real estate attorneys for 45,000 square feet of space on the 40th and 41st floors. ¶ We disagree with Special Term's grant of summary judgment and find material issues of fact, including whether plaintiff was the procuring cause of the lease entered into between Dewey and 101 Park Avenue Associates and the related issue of whether plaintiff had been retained to secure space for the law firm or solely to obtain rental quotations to be used in connection with Dewey's renegotiation of its lease at 140 Broadway. In the absence of a special agreement, a real estate broker, to recover a commission, must establish that he was the procuring cause of the sale or transaction (11 NY Jur 2d, Brokers, § 122). A broker who merely calls the property to the attention of the ultimate purchaser is not thereby entitled to a commission where no special agreement exists (*Greene v Hellman,* 51 NY2d 197, 205; *Newberry & Co. v Warnecke & Co.,* 267 App Div 418, 421, affd 293 NY 698; *Munson v Tilley,* 45 AD2d 806). As was observed in *Greene v Hellman* (*supra,* at p 206): "That is not to say that, in order to qualify for a commission, the broker in all instances must have been the dominant force in the conduct of the ensuing negotiations or in the completion of the sale. But, however variable the judicial terminology employed to express the requirement that the broker must be the procuring cause, it has long been recognized that there must be a direct and proximate link, as distinguished from one that is indirect and remote, between the bare introduction and the consummation". ¶ Plaintiff relies upon the brokerage agreement with defendant which, it is argued, obviates the need of establishing that the broker was the procuring or efficient cause. However, that agreement, in setting forth the circumstances under which a commission would be earned, provides: "As a consideration moving to the parties *to a certain lease * * ** [between the landlord and Dewey] for the letting of *certain office premises"* (emphasis

added). This, in conjunction with the fact that plaintiff had inquired with respect to 150,000 square feet, space for Dewey's entire office, raises issues as to whether, at the time, the parties contemplated a specific lease for a specific portion of the building and the *bona fides* of plaintiff's actions. Nor, on this record, may it be finally resolved whether the lease subsequently entered into by Dewey amounted to a separate and distinct transaction in light of the alleged limited nature of the law firm's original retention of the plaintiff. Clearly, the brokerage agreement between plaintiff and defendant did not recognize plaintiff as having any exclusive right or any express right to recover a commission and, from the language used, suggests that the parties had in mind a particular lease which had been discussed. ¶ We also do not agree with the conclusion at Special Term that the lease actually entered into sufficiently recognized and acknowledged plaintiff's involvement as a broker to eliminate the need for proof that it was the procuring cause of the lease. Although plaintiff is named in the lease, it neither recognizes plaintiff as the broker nor that it was entitled to a commission. The provision amounts to an agreement by Dewey to pay any broker or finder's fee and to indemnify and hold the landlord harmless should plaintiff claim entitlement to a commission. Absent a clear provision recognizing plaintiff's status as the broker with a clear entitlement to a commission, it was error for Special Term to summarily resolve the factual issues. Concur — Carro, J. P., Asch, Fein, Milonas and Kassal, JJ.